**GRAY TELEPHONE PAY STATION CO.
v. WESTERN ELECTRIC CO., Inc.**

**No. 6576.**

Circuit Court of Appeals, Seventh Circuit.
Feb. 7, 1939.

George I. Haight, Cyril A. Soans, E. F. Beaubien, and Paul J. Glaister, all of Chicago, Ill., for appellant.

Merrell E. Clark, F. T. Woodward, and H. A. Pattison, all of New York City, and Davis, Lindsey, Smith & Shonts, of Chicago, Ill., for appellee.

Before MAJOR and TREANOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decree of the District Court sustaining the defense of invalidity as to Patent No. 1,383,472, issued July 5, 1921 upon an application filed May 25, 1920 in the name of George A. Long, and assigned by him to the plaintiff. The patent expired July 5, 1938 and hence, the only affirmative relief sought is an accounting for past infringement.

The patent is for a telephone pay station adapted for use with an automatic or dial telephone system. In every-day language, the patent discloses and claims the now familiar dial type telephone pay station found in public telephone booths, drug stores and like locations. Since nickels, dimes or quarters may be used in these pay stations, they are sometimes classified as multi-coin pay stations. The patent in suit does not cover or purport to cover the older non-dial type, multi-coin pay stations used in the old-fashioned manual telephone systems, known and referred to as the 50-A machines.

Plaintiff's alleged invention consisted in the addition of a dial, which was not new, to the prior art multi-coin pre-pay type, manual pay station in connection with a system of wiring so as to permit the mechanical use of the telephone but at the same time preclude its operation except by the deposit of a coin. In order to comprehend this alleged improvement, it seems important to have in mind the prior art, especially the so-called 50-A multi-coin pre-pay station, as well as an understanding of its operation. In the use of the ordinary telephone in a manual system, the removal of the telephone receiver from the switchhook by the calling party obtains a response from the operator. In this process the switchhook is released so as to close certain electric circuits and as a result, the telephone is connected to the line, electrically, which closes a switch at the central office, designating to the operator the line which is sought to be used. She thereupon "plugs in" on that line, ascertains the number desired and makes the connections necessary to complete the call.

The 50-A pay station of the prior art is provided with means which will insure that the appropriate amount of money has been deposited by the calling party before the desired service is rendered. The expedient employed in the construction of this station to prevent a calling party from obtaining a local call connection without first depositing at least a nickel, is to place the "line-relay" at the central office under the control of the coin. It is this "line-relay" in the making of a call from an ordinary non-coin station which, upon being operated, closes a switch to light the "line-lamp" in front of the operator and thus secure her attention, and which in non-coin operation, is operated by the removal of the receiver. In the 50-A pay station the operation of this relay has been placed under coin control and is not operated by the release of the switch hook. It

can be operated, and the "line-lamp" which it controls can be lighted, only by the deposit of a coin in the pay station by the calling party. The deposit of a coin in the pay station is essential, otherwise the operator is unaware that a call is to be made. This precludes a local call connection prior to the deposit of a coin. The mechanism is such that the coin is held in suspense until it can be determined if the call can be completed. If so, the operator is enabled to divert the coin into the coin box of the pay station and thus collects it, otherwise the coin is diverted to the "coin return" chute where it may be recovered by the calling party. On a local call the coin usually deposited by the calling party is a nickel, although the 50-A pay station is so arranged that the same result may be obtained by depositing a dime or a quarter. In the making of a toll or long distance call, the calling party proceeds in the same manner as though the call was local until the time of response by the operator. When the latter ascertains the nature of such call, she advises the caller of the requisite charge, which is deposited in the station either in nickels, dimes or quarters, as may be convenient. The operator is enabled to ascertain the number and character of deposited coins by a system of signals made by the coins as they drop through their respective chutes. A nickel dropping through its chute strikes a bell once, a dime dropping through its chute strikes the same bell twice and a quarter dropping through its chute strikes a gong once. The sounds of the bell and the gong are transmitted over the telephone line to the operator by reason of the fact that the bell and gong are connected metallicly to, and therefore are "in resonant connection with", the telephone transmitter of the pay station.

As stated, this 50-A pay station is prior art with reference to the patent in suit and has been in wide use in telephone systems since as early as 1912, with all patents thereon expiring a number of years ago. It is the same structure illustrated in the patent in suit, the additions to which necessary to convert it into a dial automatic pre-pay station, is the improvement relied upon by plaintiff as constituting invention. Plaintiff, in its brief, states the situation thus: "The simple fact is that the circuit drawing of the Long dial pay station of the patent in suit is not materially different from the circuit drawing of the Long 50-A manual pay station except for the introduction of a dial in the conventional manner and the addition of the connections required to place the dial under the control of the coin operated switch."

In other words, there is claimed as novelty only that portion of the mechanism which places the dial under the control of the coin operated switch rather than under the control of the manual operated switch as theretofore found. It is not claimed there was invention in the addition of the dial and dial contacts to the 50-A telephone. Plaintiff concedes that such additions were made in the conventional way. Nor is it claimed that the patent teaches anything with reference to the automatic collection or return of the deposited coin, depending upon whether the calling party does or does not answer. As heretofore stated, the mechanism for such provision had long been in existence. Nor does the alleged invention make any improvement insofar as toll calls are concerned for the reason that they are handled by a human operator in the same manner as under the manual pay station. The claimed invention is thus confined to the means disclosed for preventing a calling party from operating the automatic switches at the central office through manipulation of his dial to complete a local call without first depositing his coin. The means disclosed for accomplishing this result consist of a coin-controlled dial shunt at the pay station. As a result of this shunt, the dial contacts, and therefore the calling dial are normally inoperative. So long as the shunt path exists around the dial contacts, it is impossible to interrupt the circuit by opening such contacts. The current flows around the shunt path. Thus, there is provided an effective "barrier", located at the pay station, for preventing the calling party from completing a desired connection without first depositing a coin. The calling party, when a coin is deposited, removes the "barrier" and renders the dial and dial contacts effective, and is enabled to secure the desired local connection.

Of the five claims, it seems to be conceded that Claim 3 is typical. Separated into clauses A to F, it reads as follows:

"3. A telephone pay-station comprising:

"(a) a telephone having a transmitter and a receiver,

"(b) the station also involving a calling dial associated with the telephone,

"(c) the telephone being normally inoperative by a subscriber, for the transmis-

855

sion of intelligence to another local sub-scriber,

"(d) coin operated means at the station, for rendering the telephone operative, and for rendering the calling dial operative to make a local call to said other subscriber,

"(e) and means for effecting the action by coins of different denominations, of audible signals of different characters,

"(f) said audible signals being in resonant connection with said transmitter."

Among the defenses invoked is that the claims of the patent in suit are invalidated by the Bay Cities Public Use. In discussing this prior use, the trial court stated:

"I am convinced that the Bay Cities prior use anticipates all of the claims of the Long patent. It, in my opinion, meets all of the requirements of a multi-coin prepayment dial pay-station; it had a coin-controlled barrier, automatic means for returning and collecting the coins, and means for enabling the operator to determine whether the necessary amount had been deposited."

The Bay City Home Telephone Company operated in the San Francisco area in the year 1912, and concededly had in operation 129 pay station telephones. An order was placed with the manufacturer for 1000 additional pay station telephones when the company was absorbed by the Pacific Telephone and Telegraph Company. The latter company used the manual system exclusively and had about 87% of the telephone subscribers in that area. It not being regarded as feasible to consolidate the automatic equipment of the Bay Cities Company with the manual equipment of the Pacific Company, the automatic equipment, including the pay stations of the Bay Cities Company were removed from service. None of these pay stations was produced in court and the record is silent as to their disposition. Plaintiff argues there is no reliable evidence concerning the Bay Cities pay station used in 1912, inasmuch as it consists of the oral testimony of witnesses given almost 25 years after the alleged devices had gone out of existence. Ordinarily there would be much force in this line of argument. A study of the record, however, convinces us that the court below reached the proper conclusion with reference to this defense. Plaintiff is in a poor position to attack the reliability of the evidence in this respect. In the first place a stipulation was entered as follows:

"It is stipulated by and between counsel for the parties that records in the possession of defendant, if produced would show that in 1912 there were 129 Baird automatic three slot coin collectors such as described by the Witness Deakin, connected to one of the central offices of the Bay Cities Home Telephone Company in San Francisco, California."

The Witness, Deakin, referred to in the stipulation, was employed by the Bay Cities Company as chief engineer from 1910 until the time it was consolidated with the Pacific Telephone and Telegraph Company. This witness identified photographs of the pay station in question, together with contemporaneous circuit drawings showing the coin control barrier in the form of a normally closed dial shunt, the means for automatically collecting or returning the deposited nickel, depending upon whether the called party does or does not answer. He described fully and in detail the construction and operation of that system. Numerous other witnesses corroborated his testimony, but irrespective of this, in view of the stipulation referred to, we are unable to escape the conclusion that we are bound, under such circumstances, to appraise the pay station used by the Bay Cities Company as described by this witness in the same manner and to the same extent as though the instrumentalities themselves were before the court. We see no occasion to go into detail in relating the mechanism and mode of operation of the Bay Cities station. It is sufficient to state that, with some minor exceptions which we do not regard as material, it is almost an exact replica of the pay station described and claimed in the patent in suit. Especially is this true as to the essential matter claimed by plaintiff, that is, a dial shunt which provides a coin control barrier at the station which precludes the calling party from making a local call without first paying for it. The testimony is rather convincing that these pay stations operated satisfactorily, and as described, they clearly anticipated the patent in suit.

If, however, our conclusion in this respect be erroneous, we think the patent in suit is invalid for lack of invention because of prior invention by one, T. G. Martin of Automatic Electric Company, which is and was during the period from 1918 to 1920 a manufacturer of automatic telephone equipment, and for which, during such period, Martin, now deceased, was chief engineer. In 1918, this company became

interested in obtaining for its automatic telephone equipment, a multi-coin, prepayment dial telephone pay station, and in connection with this matter, communicated with George A. Long of the plaintiff company. In January, 1918, Long obtained from the Automatic Electric Company an automatic type of telephone then manufactured by it. On one of these telephones Long mounted a dial and so wired the pay station as to put the dial in the circuit. As to the particulars of this device there is no evidence except the oral testimony of witnesses, which seems to be of uncertain character. There is evidence to the effect that the apparatus was tested in plaintiff's factory, but the record is rather hazy as to the result. We think the most that can be said is that Long was engaged in experimentation without any definite accomplishment. This device was submitted to the Automatic Company, and it is plaintiff's contention that it embodied the improvement claimed in the patent in suit.

There is no evidence, however, that it contained the coin controlled dial shunt barrier at the pay station which constitutes the essence of the supposed invention of the instant patent. On May 13, 1918 the Automatic Electric Company advised the plaintiff by letter with reference to the special pay station which Long had submitted for inspection. Attention was called to the fact that no provision had been made for taking care of the collection or rejection of coins in connection with its automatically operated switchboard, and the letter contained the following significant statement:

"The essential thing that we are trying to arrive at is a three-coin pay station arranged to operate in connection with a full automatic operated telephone system and as far as we can see this sample machine does not meet these conditions."

Following this letter Long went to Chicago for a conference with Martin and other engineers of the Automatic Electric Company. On July 3, 1918, plaintiff wrote the Automatic Electric Company, in which mention was made of this conference and in which appears the following:

"Further, it will be necessary for you to return to us the sample Pay Station, which we sent you sometime ago, in order that we may continue our experiments with same."

In the meantime, Martin was experimenting with a dial pay station of his own, together with the required additional central office equipment. By March, 1919, he had designed and built such a pay station which operated successfully. In June, 1919, Martin filed his patent application which matured into Martin Patent No. 1,-460,726, which disclosed the entire system, including the dial pay station which Martin had successfully reduced to practice in the previous March. This device of Martin's discloses the coin control dial shunt designed to serve as a barrier at the pay station to prevent a calling party from making a local call without first paying for it. In July, 1919, Martin sent to Long a duplicate of the dial pay station which Martin disclosed in his patent application, together with a blue print of the circuit diagram showing the circuit and its relation to the coin control dial shunt. It is claimed, and, we think with justification, that Long, in his application of May 25, 1920, disclosed this Martin pay station and it is not disputed but what Long in Figure 4 of his patent copied exactly the circuit diagram which he had received from Martin. As heretofore related, plaintiff, in his brief, concedes that the circuit drawing of the patent in suit is similar to the 50-A manual pay station "except for the introduction of a dial in the conventional manner and the addition of the connections required to place the dial under the control of the coin operated switch." If this result was achieved by Martin, as we think it was, then Martin was the inventor rather than Long.

In order to escape this conclusion, plaintiff is required to maintain the position that the pay station which it sent to the Automatic Company early in 1918 disclosed the invention for which application for patent was not made until May 25, 1920. This, in our judgment, it failed to do, especially in view of the letter of May 13, 1918, supra, from the Automatic Company to the plaintiff in which it is specifically pointed out that the pay station submitted does not meet the required conditions. It is argued by plaintiff that this situation was the result of a lack of understanding on the part of the engineers of the Automatic Company. This argument amounts to nothing more than the conclusion of the party by whom it is advanced. The record does not support it. True, Long had had much experience and was regarded as an authority concerning the matter with which he was engaged, but there is nothing in the record which militates against a similar be-

lief as to the Automatic Company and its engineers, who, likewise, had had much experience and were also well informed in such matters. Certainly the evidence does not justify the conclusion that the failure to operate the device submitted to it by Long was because of any lack of understanding.

In view of what we have said, there is no occasion for us to consider other defenses relied upon. The decree of the District Court is affirmed.